Elie P. AGHNIDES, Appellee,

v.

The MARMON GROUP, INC., a corporation, Appellant.

No. 71-1944.

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1972.

Decided July 10, 1972.

Robert J. Thrift, Jr., and Stanley Higgins, Jr., Fayetteville, W. Va. (Higgins, Thrift & Mahan, Fayetteville, W. Va., on the brief), for appellant.

Edward W. Eardley, Charleston, W. Va. (Robert J. Corber and Steptoe & Johnson and Henry C. Ikenberry and Michael D. Campbell, Washington, D. C., on the brief), for appellee.

Before BRYAN, Senior Circuit Judge, and CRAVEN and BUTZNER, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

This action for the breach of a contract for the design and construction of a prototype of an amphibious vehicle was pressed by its inventor, Elie P. Aghnides, against The Marmon Group, Inc., a manufacturer of customary automotive vehicles and a designer-fabricator of unconventional ones. The District Court held for Aghnides, allowing him rescission and recovery of $120,505.-40. This award, we think, was permissible under the evidence.

"Cyclops", the vehicle to be constructed, was primarily the creature of a patent, No. 2,967,581 as supplemented by No. 2,967,580, issued to Aghnides on January 10, 1961. The technical description appears in the patent application as follows:

". . . two hemispheroidal wheels on opposite sides of the vehicle, one near the front end and the other near the rear, with the axes of the wheels pointing outwardly and downwardly will stabilize the body. Two such wheels will act as the entire support for the vehicle. The hemispheroidal wheels preferably have their inner edges passing through indents in the

body so that these edges pass under the vehicle. It is also preferable for the rear wheel to contact the ground substantially directly to the rear of the place where the front wheel touches the ground. Means, including an engine, is employed to drive the vehicle."

Less technical language would describe the Cyclops as having two hemispheroidal wheels approximately six feet in diameter arranged in tandem, one on the right front and the other on the left rear of a narrow passenger body, with the concave portion of the tires facing inwardly. The wheels are a substantial distance apart, providing an intervening space for the body. The vehicle is propelled by a gasoline engine and is steered by braking one wheel while supplying power to the other. The dominating concept is that the vehicle would proceed in a single track, as contrasted with three- and four-pointed vehicles, such as the "Rollsled" and the "Rhino", which were developed by Marmon from earlier patents of Aghnides. Aghnides hoped to exhibit the prototype and market it for both military and civil use as an amphibian capable of operation in all weather over any terrain.

For the necessary patent applications, Marmon, through Victor Maier, its engineer, collaborated with Aghnides in the preparation of drawings and descriptions of Cyclops. After the granting of the patents, Aghnides and Marmon entered into a contract for the development of the vehicle. It was a single contract though logically divisible into two stages. The first provided for ascertainment of the feasibility of building a vehicle employing the concept of tandem wheels as previously described. For this work Aghnides agreed to, and did, pay $50,000.00 to Marmon. The second phase was the construction of the vehicle once found feasible. The District Court mistakenly, though understandably, treated these steps as represented by distinct contracts.

Apparently no dispute exists with reference to the work done by Marmon in the first stage or to the payment therefor. The entire controversy, as precisely epitomized in the pretrial order of the presiding judge, is as follows:

"3. About the year 1960 (after some preliminary activity) plaintiff and defendant entered into an arrangement under which defendant initially was to design and construct for the plaintiff a vehicle with hemispheroidal shaped wheels which came to be known as the 'Cyclops'. Plaintiff agreed to pay defendant the costs thereof.

"4. Plaintiff contends the defendant agreed to observe sound engineering and constructional practices in designing and constructing an operating prototype of the 'Cyclops' so that it would be a workable vehicle and perform to the standards and in a manner consistent with plaintiff's patent concept as set out in his United States Patents identified in the complaint.

"5. Defendant contends its only agreement was to conduct a research and development program to determine if the concept of the 'Cyclops' as disclosed by plaintiff in said patent and by his later directions could be feasibly accomplished."

Regardless of the precise undertaking, Marmon did not guarantee that the contemplated product would attain the inventor's expectations. Aghnides was assured, however, that Marmon would use reasonable standards of engineering and construction skills to produce the vehicle described in the patent.

With a jury waived, the Court detailed subordinate findings and stated its ultimate conclusions to the effect that Marmon had not fulfilled its assurance and that "the vehicle, as constructed, was a failure and totally unfit for demonstration to prospective manufacturers". Aghnides v. The Marmon Group, Inc., 344 F.Supp. 829 (SDWVa.

1971). The Court summarized Marmon's delinquencies as follows:

". . . (1) it failed to do the required and necessary engineering planning and research standard to the industry to determine the feasibility [beyond the initially apparent feasibility] or workability of the machine conceived by plaintiff and to fully inform plaintiff with respect to such feasibility, (2) it used substandard techniques and skill in the construction of the vehicle, and particularly was this so in its omission to construct a 'working scale model' of the vehicle, (3) the construction actually done was unacceptable as a reasonably satisfactory engineering accomplishment, and the charges made to plaintiff for construction thereof were not properly authenticated, (4) that plaintiff was continuously misled as to the progress of the work and (5) that the plaintiff received no benefit from the contract."

These findings and conclusions of the District Court are not clearly erroneous and therefore cannot be disturbed. F.R.Civ.P. 52. Save for the original feasibility expense of $50,000.00, there was sharp conflict in the evidence of the parties. The District Judge saw and heard the witnesses and was able to assay the proof more accurately than we.

After Aghnides satisfied the feasibility ascertainment-cost of $50,000.00, he paid Marmon $124,375.16 over the five-year period of 1960–1965. A conceded credit of $3,869.76 was accorded Marmon on an unrelated account. The plaintiff was allowed recovery of $120,505.40, with interest at six percent, in accordance with Indiana law, agreed to govern here, from May 13, 1966, the date of commencement of this action, until payment. We think the recovery should be allowed as damages for breach of contract rather than by way of rescission.

On review the judgment of the District Court is accepted.

Affirmed.